IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| William Auston Cash, ) | |
| ) | Civil Action No. 6:12-1278-MGL-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Dr. Thomas and Lt. Clawson, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the defendants' motions for summary judgment (docs. 59, 72). The plaintiff, a state prisoner proceeding *pro se*, alleges his constitutional rights were violated due to the conditions of his confinement and the defendants' deliberate indifference to his serious medical needs while he was a pretrial detainee at the Lexington County Detention Center ("LCDC").

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

Defendant Lt. Clawson filed a motion for summary judgment on November 2, 2012 (doc. 59). By order filed November 5, 2012, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On November 16, 2012, the plaintiff filed a response in opposition (doc. 70), and the defendant filed a reply on November 29, 2012 (doc. 77). Defendant Dr. Thomas filed a motion for summary judgment on November 21, 2012 (doc. 72). Another *Roseboro* order was issued on November 26, 2012. On December 6, 2012, the plaintiff filed a response in opposition (doc. 78), and the defendant filed a reply on November 29, 2012 (doc. 80). The plaintiff filed a sur-reply on December 27, 2012 (doc. 81).

**FACTS PRESENTED**

The plaintiff is currently incarcerated in the Walden Correctional Institution in Columbia, South Carolina. The plaintiff alleges in his complaint that while he was a pretrial detainee at the LCDC he was attacked by his cellmate, Inmate Alewine. He claims Alewine punched him in the jaw, which shattered his back molar. He claims he asked the staff at the LCDC to move him to another cell. Two days later he was moved into protective custody. The plaintiff claims that defendant Lt. Clawson told him that he had received information that the plaintiff was going to try to escape. The plaintiff alleges that he gave a statement and was then transferred to an isolation cell "with shit on the walls and floor." He states that he wrote a grievance regarding the conditions, and he wrote another grievance for medical treatment. The plaintiff alleges he was seen by "a very nice doctor 'Dr. Miles'" who took x-rays and gave him pain medication. The plaintiff was seen by defendant dentist Dr. Thomas, whom the plaintiff alleges cut his tooth out with a knife and left half of the tooth in his mouth. He claims his face swelled and he threw up blood. The plaintiff was again seen by Dr. Thomas, who put in stitches and gave him gauze and pain medication. The plaintiff alleges that three weeks later the stitches fell out, and he still has half of his tooth in his mouth. He claims he could not eat for a week and a half, and he could not chew or talk without his mouth bleeding (comp. at 3-4).

Defendant Lt. Clawson, the Housing Lieutenant for the LCDC, submitted an affidavit in support of his motion for summary judgment (doc. 59-2, Clawson aff.). On April 25, 2012, an LCDC correctional officer was given a request form from the plaintiff's cellmate, Alewine, indicating that the plaintiff had been discussing an escape attempt (*id.* ¶ 8; doc. 59-2 at p. 18; doc. 59-7, Tony Ward aff. ¶ 5). Correctional staff moved the plaintiff to the Protective Custody wing while the matter was investigated (Clawson aff. ¶ 8). A search of the plaintiff's cell was conducted with negative results (*id.*; doc. 59-2 at p. 18). The next morning, defendant Lt. Clawson, along with Master Correctional Officer Tony Ward, questioned the plaintiff regarding his alleged escape threat. Although the plaintiff denied any intentions of escape, he was moved as a precautionary measure to a different

2

cell on the first floor of the detention center that did not have an exterior wall (Clawson aff. ¶ 9; doc. 59-2 at p. 19; Ward aff. ¶ 6).

During the interview with Lt. Clawson and Master Correctional Officer Ward, the plaintiff informed them that his former cellmate, Alewine, had a shank in his cell. At that time, a search of plaintiff's former cell, along with a strip search of the plaintiff's former cellmate, was conducted. However, no evidence of any such weapon was ever found. At that time, the plaintiff then alleged that his former cellmate had assaulted him approximately one week prior. The plaintiff was taken to medical, where he was seen by Dr. William Miles.[1] After an investigation, it was determined that no evidence of either an assault or a weapon existed in order to initiate disciplinary proceedings against the plaintiff's former cellmate (Clawson aff. ¶¶ 26- 28; doc. 59-2 at p. 19; Ward aff. ¶¶ 8-10). According to the plaintiff, on May 30, 2012, he was "moved from a disciplinary wing to upstairs so [he] could return to a normal day of detention instead of isolation" (doc. 70 at p. 5).

Lt. Clawson attests in his affidavit that inmates are responsible for cleaning their own cells at the LCDC (Clawson aff. ¶¶ 12–13). To assist the inmates in accomplishing this task, inmates are provided with cleaning chemicals and tools daily to clean their cells (*id.* ¶ 12). When each inmate is finished using these supplies, they must return the supplies to detention center staff because keeping the supplies in their cells could create a security threat (*id.*). Lt . Clawson attests that the supplies given to the inmates are adequate to clean toilets and to clean and sanitize the cell completely, and, prior to the plaintiff being moved to a new cell, that cell would have been cleaned by LCDC staff (*id.* ¶ 13).

The LCDC's visitation logs show that the plaintiff has been visited numerous times throughout his confinement by both his former public defender, Bennett Casto, and his current appointed attorney, John Eric Kaufmann (*id.* ¶¶ 14-16; doc. 59-2 at pp.11-16).

---

[1] Dr. Miles' notes are very difficult to read; however, it appears that an x-ray was done, and the plaintiff was prescribed Flexeril and Naprosyn (doc. 59-3 at pp. 7, 31).

The medical records reflect that the plaintiff complained of pain in his right bottom molar on March 22, 2012, during his "Receiving Screening" (doc. 72-2 at p. 2). On April 19, 2012, the plaintiff completed a "Health Service Request" in which he stated that he had only a few teeth and that he had broken a tooth on a piece of meat "the other day" (*id.* at p. 5). He complained again of pain in his tooth on April 22, 2012 (*id.* at p. 6). On April 27, 2012, the plaintiff was seen by defendant Dr. Thomas, a dentist in private practice in Columbia who also works with Correctional Care Solutions, which has a contract to provide dental services to detainees housed in the LCDC (doc. 85-1, Thomas aff. ¶ 2). On that date, Dr. Thomas diagnosed the plaintiff with a decayed tooth and extracted the plaintiff's number 32 tooth (doc. 72-2 at pp. 7-9). The records do not indicate that there were any complications with the extraction. The plaintiff was provided with instructions regarding the recovery from that extraction (*id.*). On April 29, 2012, the plaintiff submitted a Health Service Request in which he claimed that the swelling from the extraction had gone down, but that his jaw had begun swelling and that he had an infection (*id.* at p. 10). The plaintiff was placed on an antibiotic for an apparent abscess by Dr. Miles (*id.* at pp. 10, 14). He again complained of swelling and difficulty opening his mouth on May 4, 2012 (*id.* at p. 11). The plaintiff was prescribed an antibiotic for the apparent infection, Tylenol for the pain, and was referred back to dental (*id.* at p. 12). On May 8, 2012, it was noted that the antibiotics cleared the infection, and the plaintiff was again given Tylenol for three more days for any residual pain (*id.* at p. 15). On May 12, 2012, the plaintiff submitted a Health Service Request stating that he needed to have his mouth looked at and an x-ray done because it was "not healing right and bone is sticking out on the inside of my mouth" (*id.* at p. 13). On June 1, 2012, Dr. Thomas noted that an x-ray taken of the plaintiff's mouth showed that the extraction site was healing (*id.* at p. 16). The plaintiff claims that on May 30, 2012, he was taken to see Dr. Thomas for x-rays, and Dr. Thomas stated, "Oh, I left part of your tooth in your mouth. Would you like me to take it out?" The plaintiff claims he

refused and told Dr. Thomas to keep the x-ray as evidence. The plaintiff further states, "Note the x-ray is missing from Plaintiff's file" (doc. 78 at p. 4).[2]

## APPLICABLE LAW AND ANALYSIS

Both defendants argue in their motions that the plaintiff failed to exhaust his administrative remedies. Defendant Lt. Clawson states in his affidavit that inmates must first file a grievance with the housing officer, and if dissatisfied with the response, the inmate must appeal up the chain of command. Lt. Clawson does not specify the time periods for responses. Lt. Clawson states that the plaintiff had not filed any grievances at the time he filed his complaint (doc. 59-2, Clawson aff. ¶¶ 29-31). The plaintiff alleges in his complaint that he filed three grievances concerning the claims raised in this matter on April 16, April 28, and May 1, 2012. He claims the three grievances were not answered, and one was torn up in front of him (doc. 1 at p. 2). He claims in his sur-reply to Dr. Thomas' motion for summary judgment that he was not provided with copies of the grievances (doc. 81 at p. 3). While it does not appear that the plaintiff could have exhausted his administrative remedies by the time he filed his complaint on May 21, 2012, this court cannot say, based on the record here, that the defendants have met their burden

---

[2]The plaintiff spends a large portion of his response in opposition to Dr. Thomas' motion for summary judgment (doc. 78 at pp. 4-7, 12-13) objecting to the undersigned's report and recommendation filed on September 19, 2012 (doc. 43), which recommended that the plaintiff's motions for default judgment be denied and that the court accept Dr. Thomas' out-of-time answer. The Honorable David C. Norton, United States District Judge, adopted the report and recommendation and denied the motions for default judgment on January 24, 2013 (doc. 97). Accordingly, the default judgment issue is no longer before this court. The plaintiff also spends a large portion of his response alleging misconduct since the filing of the complaint with regard to his legal mail by defendant Lt. Clawson (doc. 78 at pp. 7-11, 16-17). Here, even if the plaintiff's claim was properly before the court, it would fail. To state a claim that a delay or failure in delivering legal mail violated an inmate's constitutional rights, the plaintiff must allege facts showing that "the delay or failure in delivering his legal mail deprived him of meaningful access to the courts." *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989). Accordingly, the plaintiff must show that the alleged "interference with his legal mail caused him to suffer actual detriment to a legal proceeding." *Williams v. Crawford*, 339 F. App'x 288, 289 (4th Cir. 2011) (citing *Lewis v. Casey*, 518 U.S. 343, 349-51 (1996) (holding that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation)). The plaintiff has failed to allege or show any such injury, and a review of the docket shows numerous filings by the plaintiff, all of which have been considered by the court. Accordingly, any such allegation of deprivation of meaningful access to the courts fails.

of showing a failure to exhaust. Accordingly, the undersigned will consider the plaintiff's claims on the merits.

### *Dr. Thomas*

The standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment—deliberate indifference to serious medical needs. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir.1992). Not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the [Constitution]." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). The government is required to provide medical care for incarcerated individuals. *Id.* at 102. However, to establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir.1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. *See Estelle*, 429 U.S. at 106. Further, while the Constitution requires a prison to provide detainees with medical care, it does not demand that a prisoner receive the treatment of his choice. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988). Disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). *See Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment.");

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). "A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990) (citation

omitted).  "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). *See also Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir.1996) (noting that "the subjective component requires proof of more than mere negligence but less than malice").

The plaintiff's claim that Dr. Thomas was deliberately indifferent to his serious medical need fails on the merits.  Assuming for purposes of this motion that the plaintiff can show a serious medical need, he has failed to demonstrate that Dr. Thomas was deliberately indifferent to his medical condition.  As his medical records show, the plaintiff was seen by Dr. Thomas for his complaints about his tooth, Dr. Thomas removed the tooth, and, when the plaintiff complained of pain and swelling, he was seen by medical staff and given antibiotics and pain medication.  The plaintiff was later seen by Dr. Thomas at which time an x-ray was taken, which showed the extraction site was healing.  The medical evidence does not indicate that the plaintiff had any further issues with the extraction site after June 2012.  While the plaintiff alleges that Dr. Thomas cut his tooth out with a knife and left half of the tooth in his mouth, he has presented no evidence of this.  As the plaintiff has failed to show that Dr. Thomas acted with deliberate indifference, he has failed to state a constitutional violation.

In his response in opposition to Dr. Thomas' motion for summary judgment, the plaintiff alleges that the injuries he alleged in his complaint were the result of Dr. Thomas prescribing codeine to him to which he is allergic (doc. 78 at pp. 1-3, 11-12). Specifically, on April 27, 2012, and May 4, 2012, Dr. Thomas prescribed Tylenol No. 3[3] to the plaintiff for pain associated with the tooth extraction (doc. 72-2 at pp. 8, 14).  The plaintiff claims that an unnamed nurse told him that some of his symptoms were caused by the administration of codeine (doc. 78 at p. 3).  These allegations were not included in the plaintiff's complaint (*see* doc. 1 at pp. 3-5).  Moreover, on February 8, 2013, the

---

[3]Tylenol No. 3 contains 30 mg of Codeine Phosphate. *See* http://www.rxlist.com/tylenol-codeine-drug.htm.

7

undersigned denied the plaintiff's motion to amend his complaint to add such allegations because the motions for summary judgment were already fully briefed, and the plaintiff acknowledged that he was aware of these allegations prior to filing his complaint (*see* doc. 113). Accordingly, it is recommended that the district court not consider this claim.

To the extent the district court chooses to consider this allegation, any claim of medical indifference in this regard fails. The plaintiff has presented evidence that he indicated he had an allergy to codeine in his Mental Health Screening and Evaluation and Medical History and Physical Assessment on March 29, 2012, and in Health Service Requests on April 2 and 4, 2012 (doc. 78-1 at pp. 2-3, 7-8). However, as argued by Dr. Thomas, there is no indication in the record that the plaintiff raised any concern to Dr. Thomas or any other practitioner who prescribed Tylenol No. 3 to him or that he even mentioned his alleged allergy. Furthermore, the plaintiff has failed to show that he suffered any injury or complications as the result of any prescriptions given to him by Dr. Thomas or any other practitioner who saw him for complaints about his tooth extraction. The plaintiff argues that the alleged actions of Dr. Thomas amount to "gross negligence" (doc. 78 at p. 11). Assuming the plaintiff could prove such, "[i]nadvertent error, negligence, gross negligence and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment." *Munoz v. Providence Hospital*, C.A. No. 3:10-1899-HFF-JRM, 2010 WL 3699883, at *3 (D.S.C. Aug. 3, 2010) (citing *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir.1996)), *Report and Recommendation adopted by* 2010 WL 3604967 (D.S.C. Sept. 14, 2010). *See also Gambrell v. Preston*, C.A. No. 2:06-2943-CMC-RSC, 2007 WL 2302579, at *3 (D.S.C. Aug. 9, 2007) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (stating that the deliberate indifference standard goes "beyond even a showing of gross negligence or recklessness . . . "). Viewing the evidence in a light most favorable to the plaintiff, the evidence is insufficient to raise a genuine issue of fact as to whether Dr. Thomas was deliberately indifferent to the plaintiff's serious medical needs, and, accordingly, this claim should be dismissed.

Having found that defendant Dr. Thomas is entitled to summary judgment regarding the plaintiff's constitutional claim, it is recommended that the court decline to exercise supplemental jurisdiction over any claims for relief construed by the court to be asserted pursuant to state law. *See* 28 U.S.C. § 1367(c)(3).

Based upon the foregoing, Dr. Thomas' motion for summary judgment should be granted.

***Lt. Clawson***

Defendant Lt. Clawson, in his official capacity, is the alter-ego of the duly elected Sheriff of Lexington County, South Carolina. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See Alabama v. Pugh*, 438 U.S. 781 (1978) (per curiam). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir.1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacities from liability for monetary damages under 42 U.S.C. § 1983. *Id.* It is well settled, both in South Carolina and federal law, that a Sheriff in South Carolina is an arm of the State and not a County employee and therefore is entitled to Eleventh Amendment Immunity in his or her official capacity from suit in Federal Court. *See Cromer*, 88 F.3d at 1332. As a result, to the extent the plaintiff has alleged claims against Lt. Clawson in his official capacity, such claims must be dismissed because this defendant is entitled to immunity pursuant to the Eleventh Amendment.

The plaintiff alleges that the conditions of his confinement have violated his constitutional rights while incarcerated at LCDC. Specifically, the plaintiff appears to complain of two aspects of the conditions of his confinement: (1) his placement in isolation; and (2) the cleanliness of his cell. Because at all relevant times the plaintiff was a pretrial

detainee, his conditions of confinement claims are evaluated under the Fourteenth Amendment rather than the Eighth Amendment, which is used to evaluate conditions of confinement for those convicted of crimes. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Unlike convicted inmates, pretrial detainees have not been adjudicated guilty of a crime and may not be subjected to any form of "punishment." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir.1988). To establish that a condition or restriction of confinement is constitutionally impermissible "punishment," a pretrial detainee must show "either that it was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." *Id*. (citing *Bell v. Wolfish*, 441 U.S. 520, 538–40 (1979)). Courts may infer that a restriction or condition is not reasonably related to a legitimate governmental objective, and is therefore punishment, if the restriction is arbitrary or purposeless. *Bell*, 441 U.S. at 539. However, while the purpose of pretrial confinement is to ensure the detainee's presence at trial, the detention center may impose restraints on the detainee that are reasonably related to the detention center's interest in maintaining the facility's security, even if the restraints "are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Id*. at 539–40.

The record before the court, as set forth above, shows that on April 25, 2012, an LCDC correctional officer was given a request form from the plaintiff's cellmate indicating that the plaintiff had been discussing an escape attempt. In light of the plaintiff's alleged threat, a search of the plaintiff's cell was conducted, and he was transferred to the Protective Custody wing on the first floor of the detention center pending a more thorough investigation. The next morning, defendant Lt. Clawson, along with Master Correctional Officer Tony Ward, questioned the plaintiff regarding his alleged escape threat. Although the plaintiff denied any intentions of escape, the evidence shows that he was moved as a precautionary measure to a different cell on the first floor of the detention center that did not have an exterior wall. The evidence demonstrates that the plaintiff's placement in isolation was for a legitimate non-punitive governmental objective, namely to prevent the

possibility of his escape. "Confinement in even administrative segregation for medical and security reasons does not violate a detainee's or prisoner's constitutional rights; no infringement on the prisoner's liberty interests has taken place because confinement, restriction of movement and/or access to privileges, and heightened security measures are quintessential to the nature of prison life." *Smith v. Clary*, C.A. No. 9:12-1779-RBH-BM, 2012 WL 4059977, at *2 (D.S.C. Aug. 16, 2012) (citing *Sandin v. Conner*, 515 U.S. 472, 486 (1995)), *Report and Recommendation adopted by* 2012 WL 4059908 (D.S.C. Sept. 14, 2012). The plaintiff has made allegations against Lt. Clawson for "abuse of power" and "inhumane treatment" (doc. 1 at pp. 2, 5), but these conclusory allegations do not support a claim of relief. The plaintiff has failed to show any evidence that his placement in isolation was in order to "punish" him. Accordingly, this claim fails.

The plaintiff also alleges that his isolation cell had "shit on the walls and floor" (doc. 1 at p. 3). "The due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." *Martin*, 849 F.2d at 870. Under the Eighth Amendment, protection against cruel and unusual punishment includes protection against inhumane conditions of imprisonment. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir.1996). To determine whether a prison official has violated a prisoner's Eighth Amendment rights, a court must analyze "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Id*.; *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (discussing Supreme Court decisions in Eighth Amendment cases and noting Eighth Amendment claims consist of objective and subjective components).

According to Lt. Clawson, inmates are responsible for cleaning their own cells at the LCDC, and they are provided with cleaning chemicals and tools daily to clean their cells. When the inmates are finished using these supplies, they must return the supplies to detention center staff because keeping the supplies in their cells could create a security threat. The supplies given to the inmates are adequate to clean toilets and to clean and

sanitize the cell completely. Moreover, Lt. Clawson attests that prior to the plaintiff being moved to a new cell, that cell would have been cleaned by LCDC staff. The plaintiff has put forth absolutely no evidence supporting his claim that the conditions of his cell rise to the level of a constitutional deprivation, and he does not even address this claim in his response in opposition to Lt. Clawson's motion for summary judgment (*see* doc. 70).

Based upon the foregoing, summary judgment should be granted on the conditions of confinement claims.

The plaintiff has also failed to establish a claim for denial of adequate access to the courts. The United States Constitution guarantees prisoners the right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court held that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation. This requirement can be satisfied by demonstrating that a non-frivolous legal claim was frustrated or impeded by some actual deprivation of access. *Id.* at 352-53. A claim for failure to provide access to the courts must be pleaded with specificity. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). The plaintiff alleges that during his time in isolation he was not allowed to call his attorney (doc. 1 at pp. 3, 5). As argued by Lt. Clawson, the plaintiff has not alleged that he was denied the right to contact his attorney, but only that he was denied the right to contact his attorney in the manner and at the times he wished. The plaintiff remained free to write to his attorney at any point if he needed to do so (doc. 59-2, Clawson aff. ¶ 15). Also, in his response in opposition to the motion for summary judgment, the plaintiff alleges that Lt. Clawson entered his cell and told another officer to destroy an affidavit the plaintiff had in his cell (doc. 70 at p. 8). The plaintiff offers no explanation of the contents of the affidavit or how it would support any of his claims in this lawsuit. As he has failed to produce any evidence of any injury incurred as a result of the alleged denial of access, summary judgment is appropriate on this claim.

The plaintiff also alleges that his constitutional rights were violated because defendant Lt. Clawson did not initiate disciplinary proceedings against his former cellmate[4] (doc. 1 at p. 5). As set forth above, the record before the court indicates that the plaintiff first alleged that his former cellmate possessed a weapon while he was being investigated regarding his alleged threats of attempting to escape on April 26, 2012. At that time, a search of the plaintiff's former cell, along with a strip search of the plaintiff's former cellmate, was conducted in an effort to find the weapon that the plaintiff claimed his former cellmate possessed. However, no evidence of any such weapon was ever found. At that time, the plaintiff then alleged that his former cellmate had assaulted him approximately one week prior. In further following up on this allegation, the plaintiff was taken to medical for examination. Lt. Clawson and Master Correctional Officer Tony Ward attest that, after a thorough investigation, it was determined that no evidence of either an assault or a weapon existed in order to initiate disciplinary proceedings against the plaintiff's former cellmate. It is well settled that "a private citizen lacks a judicially cognizable interest in the prosecution

---

[4] It is unclear whether the plaintiff has attempted to state a claim for failure to protect. To the extent he has attempted to state such a claim, summary judgment is appropriate. The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). As the Fourth Circuit recently stated in *Bacchus v. Scarborough*:

> To establish a claim for failure to protect, an inmate must show: (1) "serious or significant physical or emotional injury," and (2) that prison officials exhibited deliberate indifference to inmate health or safety. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks omitted). To be deliberately indifferent, a prison official must "know of and disregard an objectively serious ... risk of harm." *Id*. A showing of mere negligence does not qualify as deliberate indifference. *Davidson v. Cannon*, 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir.1999).

466 F. App'x 269, 271 (4th Cir. 2012). Unless a prison official actually makes the inference that a substantial risk of serious harm exists, "he does not act with deliberate indifference, even where his actions violate prison regulations or can be described as stupid or lazy." *Drayton v. Cohen*, C.A. No. 2:10-3171-TMC, 2012 WL 666839, at *6 (D.S.C. Feb. 29, 2012) (citing *Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997)). The plaintiff has not alleged nor has he presented evidence that Lt. Clawson was the person who made the housing assignment or that he complained to Lt. Clawson regarding inmate Alewine prior to the alleged assault. As he has failed to show that Lt. Clawson made the inference that a substantial risk of harm existed, any such claim for failure to protect fails.

or non-prosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Therefore, regardless of the merits that may or may not have existed for the initiation of disciplinary proceedings against the plaintiff's former cellmate, summary judgment on this claim is appropriate.

To the extent that the plaintiff claims defendant Lt. Clawson has violated his constitutional rights with regard to his medical care, such claim should be dismissed. The record is clear that Lt. Clawson is not a professional medical care provider, and the LCDC has contracted with a third-party to provide medical care for inmates (doc. 59-2, Clawson aff. ¶ 19). Accordingly, he is justified in relying on the judgment of the medical staff with regard to the course of treatment necessary for inmates. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (finding that to establish a claim for denial of medical care against non-medical supervisory defendants, plaintiff must show defendants failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct) (citations omitted). The plaintiff has failed to present any evidence supporting a claim of deliberate indifference to his serious medical needs against defendant Lt. Clawson.

Moreover, defendant Lt. Clawson in his individual capacity is entitled to qualified immunity from civil damages as described in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) and its progeny, as his conduct did not violate any constitutional right of the plaintiff.

Having found that defendant Lt. Clawson is entitled to summary judgment regarding the plaintiff's constitutional claims, it is recommended that the court decline to exercise supplemental jurisdiction over any claims for relief construed by the court to be asserted pursuant to state law. *See* 28 U.S.C. § 1367(c)(3).

Based upon the foregoing, Lt. Clawson's motion for summary judgment should be granted.

## CONCLUSION AND RECOMMENDATION

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' motions for summary judgment (docs. 59, 72) be granted as set forth above.

IT IS SO RECOMMENDED.


June 18, 2013                                                                  s/ Kevin F. McDonald
Greenville, South Carolina                                          United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).